**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
(Western Division)

| | |
|---|---|
| In re:<br><br>**NORTHERN BERKSHIRE HEALTHCARE, INC., et al.**[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 14-30327-HJB<br><br>Jointly Administered |

**TRUSTEE'S MOTION FOR (A) THE INTERIM AND PERMANENT
USE OF CASH COLLATERAL, (B) THE GRANTING OF REPLACEMENT
LIENS, (C) THE ENTRY OF SCHEDULING ORDER REGARDING
<u>CONTINUED USE OF CASH COLLATERAL AND (D) ADDITIONAL RELIEF</u>**
(Emergency Consideration Requested)

Pursuant to Sections 105 and 363 of the United States Bankruptcy Code (the "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure 2002, 4001, and 9014, and MLBR 4001-2, Harold B. Murphy (the "Trustee"), the interim trustee for Northern Berkshire Healthcare, Inc., Northern Berkshire Healthcare Physicians Group, Inc., and Visiting Nurse Association & Hospice of Northern Berkshire, Inc. (collectively the "Debtors"), moves the Court for:

a. The entry, on an emergency basis, of an interim order authorizing the use of Cash Collateral (as defined below) on the terms set forth in this motion, in an amount necessary to avoid immediate and irreparable harm;

b. The entry of a permanent order authorizing use of Cash Collateral on the terms set forth in this motion;

c. The granting of replacement liens to Wells Fargo (as defined below) that: (i) are limited to the same types of post-petition property of the estate against which Wells Fargo held liens as of the Petition Date (as defined below); (ii) maintain the same priority, validity and enforceability as Wells Fargo's pre-petition liens; (iii) shall be recognized only to the extent of the diminution in value of Wells Fargo's pre-petition collateral after the Petition Date resulting from the use of the Cash

---

[1] The other debtors in these jointly administered cases are: (a) Northern Berkshire Healthcare Physicians Group, Inc., bankruptcy number 14-30329-HJB; and (b) Visiting Nurse & Hospice of Northern Berkshire, Inc., bankruptcy number 14-30330-HJB.

    Collateral during the bankruptcy cases; and (iv) shall not attach to any causes of action under Chapter 5 of the Bankruptcy Code or any proceeds of those causes of action; and

  d. The entry of an order setting a final hearing on the continued use of Cash Collateral.

Prior to the Petition Date, the Debtors operated a full service hospital and certain associated medical practices. The Debtors' provision of medical services ceased prior to the Petition Date, and the Trustee must, among other things, administer the orderly wind down of the hospital and associated medical practices. To do so, the Trustee requires the immediate use of Cash Collateral to, among other things, retain and pay employees to assist the Trustee, pay taxes associated with the employees, pay utilities, pay for insurance, and pay for the maintenance of the Debtors' computer systems.[2] The ability to use Cash Collateral to pay these key expenses on an immediate basis is necessary to both permit the Trustee to insure that the wind down of the Debtors' hospital and medical practices is done in a fashion that will minimize the impact on the Debtors' former patients and the local community, and to preserve the value of the Debtors' assets. Emergency consideration of this motion is therefore warranted.

 In further support of this motion, the Trustee avers as follows:

### **BACKGROUND**

1. On April 3, 2014 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code. The Trustee was appointed on April 3, 2014.

2. Northern Berkshire Healthcare, Inc. ("NBH") is a non-profit healthcare corporation located in northern Berkshire County, Massachusetts and is the sole member of the other two Debtors, which are also non-profit corporations. Prior to the Petition Date, NBH

---

[2] Contemporaneously with this motion, the Trustee has filed a motion for authority to retain certain key employees to assist in the orderly wind down of the hospital and associated medical practices.

2

operated the North Adams Regional Hospital and the other Debtors operated associated medical practices in North Adams, Massachusetts.

3. Wells Fargo Bank, N.A. ("Wells Fargo") serves as trustee or successor trustee for certain bonds that are allegedly secured by substantially all the Debtors' assets, including any cash collateral (as defined under the Bankruptcy Code the "Cash Collateral").[3] Wells Fargo asserts claims in excess of $30,000,000.

4. Prior to the Petition Date, the Debtors ceased providing medical services and moved any patients to other hospitals. The Debtors discharged substantially all of their employees prior to the Petition Date and paid all wages, vacation pay and sick pay in full. Two (2) core groups of administrative employees were, prior to the Petition Date, paid in advance either through April 4, 2014, or April 11, 2014.

5. The Trustee is working with various creditor constituencies and other interested parties, including Berkshire Health Services, Inc. ("BHS") and the Attorney General for the Commonwealth of Massachusetts, to insure the orderly wind down of the Debtors' hospital and associated medical practices, the transition of patient records to BHS and to facilitate BHS' provision of critical medical services to the local community.

6. Among the tasks associated with the orderly wind down of the Debtors' hospital and associated medical practices are disposing of controlled substances within the hospital, maintaining security for the hospital property, arranging for access to and storage of patient medical records, maintaining the integrity of the hospital's computer network, arranging for the coding and billing of medical accounts receivable, preserving specialized medical equipment

---

[3] The Trustee has not reviewed Wells Fargo's liens and claims, and reserves all rights with respect to such liens and claims.

3

pending its liquidation, and arranging for the filing of various reports with state and Federal agencies.

## ARGUMENT

7.  Attached as Exhibit A is a budget (the "Budget") setting forth estimated receipts and disbursements for the period from April 11, 2014, through July 4, 2014 (the "Budget Period"). As the Budget demonstrates, there is sufficient Cash Collateral to fund the estimated expenses during the Budget Period. The Trustee requests the authority to use Cash Collateral substantially in accordance with the Budget. These bankruptcy cases are less than one (1) week old and the Budget was prepared based on estimates the best information available. The Trustee therefore reserves the right to modify the Budget as circumstances dictate.

8.  Section 363(e) of the Bankruptcy Code provides that a party with an interest in property proposed to be used, sold or leased by the trustee must receive adequate protection for such interest before the trustee may use, sell or lease such property. 11 U.S.C. § 363(e).

9.  Section 361 of the Bankruptcy Code provides that when adequate protection is required under Section 363 of the Bankruptcy Code, such adequate protection may be provided by, *inter alia*, "providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property." 11 U.S.C. § 361(2).

10. In order to provide adequate protection, the Trustee proposes to provide Wells Fargo with replacement liens (the "Replacement Liens"). The Replacement Liens would be limited to the same types of post-petition property of the estate against which Wells Fargo held liens as of the Petition Date, and would maintain the same priority, validity and enforceability as Wells Fargo's pre-petition liens. The Replacement Liens would be recognized only to the extent

4

of the diminution in value of Wells Fargo's pre-petition collateral after the Petition Date resulting from the Trustee's use of the Cash Collateral during the bankruptcy cases. Lastly, the Replacement Liens would not attach to any causes of action under Chapter 5 of the Bankruptcy Code or any proceeds of those causes of action.

11. The Trustee has not determined the amount of any claims asserted by Wells Fargo nor the extent, priority or validity of its asserted liens. The proposed Replacement Liens do not prejudice any rights, claims or defense the Trustee may have with respect to Wells Fargo' asserted liens and claims. All of the Trustee's rights under Section 506(c) of the Bankruptcy Code are preserved. The proposed Replacement Liens do not violate any provision of MLBR 4001-2(c).

12. The use of Cash Collateral and the granting of the proposed Replacement Liens are reasonable and in the best interest of the Debtors, their creditors and their bankruptcy estates.

13. Based on discussions with Wells Fargo, the Trustee believes that Wells Fargo consents to the use of Cash Collateral on an emergency basis.

### NOTICE

14. This motion has been served upon the United States Trustee, counsel to Wells Fargo, the Attorney General, the Debtors' respective twenty (20) largest creditors, the Internal Revenue Service, the Massachusetts Department of Revenue, and all parties who have requested notice in the Debtors' cases. The Trustee submits that such service is appropriate given the relief requested and the circumstances of the Debtors' cases.

WHEREFORE, the Trustee requests that the Court enter an order: (a) approving the notice of this motion as described above; (b) authorizing the Trustee to use Cash Collateral on an emergency basis as proposed in this motion pending the scheduling of a hearing on the

5

continuing use of Cash Collateral; (c) authorizing the Trustee to use Cash Collateral as proposed in this motion on a continuing basis in an amount necessary to administer the orderly wind down of the Debtors' hospital and associated medical practices; (d) granting Wells Fargo replacement liens in accordance with the terms of this motion; and (e) granting such other relief as is just and proper.

Respectfully Submitted,

HAROLD B. MURPHY, Trustee,
By his proposed counsel,

/s/ *D. Ethan Jeffery*
Harold B. Murphy (BBO #362610)
D. Ethan Jeffery (BBO #631941)
MURPHY & KING, Professional Corporation
One Beacon Street
Boston, MA  02108-3107
Tel: (617) 423-0400
Fax: (617) 556-8985
dej@hanify.com

Dated:  April 9, 2014
667519