**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
(Western Division)

| | |
|---|---|
| In re:<br><br>**NORTHERN BERKSHIRE**<br>**HEALTHCARE, INC., et al.**[1]<br><br>**Debtors.** | Chapter 7<br><br>Case No. 14-30327-HJB<br><br>Jointly Administered |

**TRUSTEE'S MOTION (A) TO AUTHORIZE SALE OF SUBSTANTIALLY
ALL ASSETS BY PRIVATE SALE FREE AND CLEAR OF LIENS, CLAIMS
AND INTERESTS; (B) TO AUTHORIZE TRUSTEE TO EFFECTUATE ASSET
PURCHASE AGREEMENT; (C) TO AUTHORIZE THE ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS; AND (D) FOR RELATED RELIEF**

Harold B. Murphy (the "Trustee"), the Chapter 7 trustee for Northern Berkshire Healthcare, Inc., Northern Berkshire Healthcare Physicians Group, Inc., and Visiting Nurse Association & Hospice of Northern Berkshire, Inc. (collectively the "Debtors"), moves the Court for the entry of an order (a) authorizing the Trustee to effectuate the asset purchase agreement (the "APA") with Berkshire Medical Center, Inc. or its nominee (the "Buyer"), (b) authorizing the sale of substantially all of the Debtors' assets by private sale (the "Sale") free and clear of all liens, claims and interests, (c) authorizing the Trustee to assume and assign certain executory contracts in conjunction with the proposed sale, and (d) for related relief.[2] Except for those liabilities of the Debtors that are assumed by Buyer, all liens, claims and interests shall attach to the proceeds of the Sale to the same extent, priority and validity that existed on the Petition Date (as defined below).

---

[1] The other debtors in these jointly administered cases are: (a) Northern Berkshire Healthcare Physicians Group, Inc., bankruptcy number 14-30329-HJB; and (b) Visiting Nurse & Hospice of Northern Berkshire, Inc., bankruptcy number 14-30330-HJB.

[2] Capitalized terms not otherwise defined in this motion shall have the meanings ascribed to them in the APA.

1

In support of this motion, the Trustee avers as follows:

## I.   JURISDICTION AND VENUE

1. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334 and 157.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

3. The statutory predicates for the relief sought in this motion are pursuant to Sections 105, 363 and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq.(the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 2002-2, 2002-4, 2002-5, 6004-1 and 9013-3 of the Local Bankruptcy Rules of the United States Bankruptcy Court of the District of Massachusetts (the "Local Rules").

## II.   THE PROPOSED SALE[3]

4. Subject to Court approval, the Trustee entered into the APA with the Buyer. A copy of the APA is attached as Exhibit 1.

**A.   The Purchase Price And The Assets to be Purchased.**

5. The purchase price for the assets to be acquired (the "Acquired Assets") is $4,000,000 consisting of: (a) $3,400,000 for the Hospital Campus (as defined below) and the Fixed Assets (as defined below) located on the Hospital Campus (the "Hospital Purchase Price"); and (b) $600,000 for the Family Medicine Building, the Ground Lease, and the Fixed Assets located at the Family Medical Building (the "Family Medical Building Purchase Price" and together with the Hospital Purchase Price, the "Purchase Price"). The Buyer has also agreed to

---

[3] The description of the proposed sale is not meant to be a substitute for the APA, which contains additional terms and conditions. In the event of a conflict between this motion and the APA, the APA shall control.

2

assume certain contracts and leases and to pay the costs to keep such contracts and leases in force pending closing and to cure any defaults under those contracts and leases (the "Cure Claims").

    6.    The Acquired Assets consist of the Trustee's right and interest to the following:

    a.    The real property comprising (1) the real estate described on Exhibit B to the APA and located at 71 Hospital Avenue, North Adams, Massachusetts, including the hospital building and all improvements located thereon (the "Hospital Campus") and (2) the family medicine building (the "Family Medicine Building", and together with the Hospital Campus, the "Real Estate"), located at 820 State Road, North Adams, Massachusetts, by way of Debtors' rights under the ground lease, a notice of which is recorded with the Northern Berkshire District Registry of Deeds at Book 1025, Page 403, as amended (the "Ground Lease"), by way of sale and assignment of the Debtors' interest under the Ground Lease, and furniture and fixtures contained in the Family Medicine Building;

    b.    The non-leased tangible personal property of the Debtors located on the Real Estate on the Closing Date, including, without limitation, all fixtures, medical apparatus, machinery, equipment, tools, instruments, furniture, furnishings, computers, Documents, building maintenance equipment, parts and accessories and supplies, all leasehold improvements, supplier lists and contact information, usable goods and supplies, including food, janitorial supplies, office supplies, forms, Consumables, disposables, linens, and medical supplies, even if fully depreciated or amortized or written off the books of the Debtors, other than the Excluded Assets (collectively the "Fixed Assets");

    c.    Medical Records previously maintained by the Debtors, subject to any conditions on transfer set forth in the Medical Records Custody Agreement;

    d.    Subject to Section 4 of the APA and to the extent Transferable, any rights under contracts, agreements, leases and licenses to which any of the Debtors is a party and which constitute Assumed Contracts and Additional Contracts determined in accordance with Section 4 of the APA, including those contracts assumed and assigned to Buyer pursuant to section 365 of the Bankruptcy Code;

    e.    All pre-petition deposits remaining at the Closing Date (including security deposits for rent, electricity, telephone or other utilities and deposits posted under any Contract) and prepaid charges and expenses of Debtors associated with the Assumed Contracts and Additional Contracts for all periods prior to the Occupancy Date, other than any deposits or prepaid charges and expenses paid in connection with or relating to any Excluded Assets or which have been or will be netted by the holder thereof against any unpaid pre-petition or post-petition liability of the Trustee;

f. To the extent Transferable, all Permits formerly required of the Debtors for the operation of the Debtors' businesses (the "Business");

g. To the extent Transferable, all Intellectual Property, including without limitation the name, "North Adams Regional Hospital", and the website content related to the Hospital at www.nbhealth.org and the rights of Debtors as licensee under any Intellectual Property licenses (the "Purchased Intellectual Property");

h. To the extent Transferable, all rights of Debtors under or pursuant to all warranties, representations and guarantees made by suppliers, manufacturers and contractors to the extent affecting the Purchased Assets, other than any warranties, representations and guarantees pertaining to any Excluded Assets;

i. All telephone and fax numbers, and domain names and email addresses of the Debtors associated with the Business;

j. To the extent Transferable, all Documents that are used in, held for use in or intended to be used in, or that arise primarily out of, the Business in the Trustee's possession on the Closing Date, including Documents relating to the services provided by the Business, the marketing of the services provided by the Business (including advertising and promotional materials), Purchased Intellectual Property, personnel files for such of the Debtors' former employees that have been hired by Buyer as of the Closing and files, including credit information and supplier lists.

7. The Acquired Assets do not include, among other things:

a. Pharmaceuticals and medications for treating medical conditions, to the extent the Trustee is prohibited by law from conveying such to Buyer, and Consumables, to the extent not purchased by Buyer prior to the Closing, and whether any such pharmaceuticals, medications and Consumables are located on the Real Estate or otherwise;

b. Rights and obligations under contracts, agreements, personal property leases, employment contracts, collective bargaining agreements, provider agreements, unexpired leases, licenses and Intellectual Property licenses which do not constitute Assumed Contracts;

c. All deposit accounts, all cash, cash equivalents, bank deposits or similar cash items of Debtors, all marketable securities owned by Debtors and all Documents related thereto;

d. All Accounts Receivable and all bank accounts of Debtors into which deposits for Accounts Receivable and other rights of payments for goods and services are made and all outstanding checks and deposits in transit relating to pre-petition

4

                Accounts Receivable and other rights of payment for goods and services;

e.     Any rights to refunds, settlements and retroactive adjustments, whether related to the periods ending before, on or after the Closing Date arising in connection with the Medicare and Medicaid provider numbers associated with the Business and related participation agreements, including without limitation those set forth in any in any cost reports, as well as any other third party healthcare payor program of the Business;

f.     Any claim, right, or interest, of the Debtors in or to any refund, rebate, abatement or other recovery for taxes, together with any interest due thereon or penalty rebate arising therefrom;

g.     All insurance policies or rights to proceeds;

h.     All general intangibles of the Debtors, not expressly included in the Acquired Assets;

i.     All of Debtors' rights, judgments, claims, demands, rights of recovery or set off of whatever nature, condemnation awards, or causes of action and choses in action of the Debtors and/or of the Trustee against third parties, including, without limitation, any and all actions or claims under sections 544, 545, 547, 548, 549, 550, 551 and 724(a) of the Bankruptcy Code, other than causes of action arising in the ordinary course of business that are required to enforce Buyer's rights to ownership of the Purchased Assets;

j.     All rights in connection with any assets of any employee benefit plans;

k.     Any books and records of the Debtors relating to the Debtors' organization, business, personnel, assets, liability and operations other than those included in the Purchased Assets;

l.     Any asset which the Buyer designates in writing to the Trustee, at any time until Closing, as an Excluded Asset; and

m.     All other rights of the Trustee under this Agreement, the Use and Occupancy Agreement between Buyer and the Trustee dated as of April 30, 2014 (the "Use and Occupancy Agreement") and the transactions contemplated under such agreements.

8.     Except for those liabilities specifically assumed by the Buyer, the APA requires that the Trustee deliver the Acquired Assets free and clear of liens, claims and interests pursuant to Section 363 of the Bankruptcy Code.

5

**B.    Berkshire Medical Center, Inc.**

9.    The Buyer is a Massachusetts not-for-profit corporation that operates a 302 bed full service community hospital located in Pittsfield, Massachusetts. The Buyer is an affiliate of Berkshire Health Systems, Inc., a not-for-profit organization that provides comprehensive healthcare services to the Berkshire County region through a network of affiliates which include the Buyer, the BMC Hillcrest Campus, Fairview Hospital, Berkshire Visiting Nurse Association, BHS physician practices, and long-term care associate Berkshire Healthcare Systems.

10.    The Buyer is a "covered entity" under the Health Insurance Portability and Accountability Act of 1996, as amended by the Health Information Technology for Economic and Clinical Health Act, Title XIII of Division A and Title IV of Division B of the American Recovery and Reinvestment Act of 2009 and the regulations promulgated at 45 CFR Parts 160 and 164 that contain the Privacy, Security, Breach Notification and Enforcement Rules (collectively "HIPAA").

11.    Pursuant to the Use and Occupancy Agreement, which was approved by the Bankruptcy Court, the Buyer is operating an emergency medicine department (an "EMD") on the Hospital Campus. Under the Use and Occupancy Agreement, the Buyer has the right to utilize the Family Medicine Building as well. The APA and Use and Occupancy Agreement provide that, if the Buyer is not the successful purchaser of the Acquired Assets, the Buyer may continue to operate under the Use and Occupancy Agreement for so long as is reasonably necessary, in the determination of the Commonwealth of Massachusetts, for the Buyer to continue to provide an EMD, but in no event later than September 1, 2015.

12. The APA was negotiated between the Trustee and the Buyer at arms' length and in good faith. There are no connections between the Trustee and the Buyer or conduct by the Buyer that would prevent a finding that the Buyer is a good faith buyer pursuant to Section 363(m) of the Bankruptcy Code. To the contrary, such a finding is appropriate in these cases, and is a requirement of the APA.

C. **Executory Contracts to be Assumed.**

13. The APA requires the Trustee to seek to assume and assign to the Buyer (or its nominee) certain executory contracts and unexpired leases (collectively the "Assumed Contracts"). A list of the Assumed Contracts and the proposed cure claims (the "Cure Claims") associated with the Assumed Contracts is attached as Exhibit 2. The Buyer is responsible for the cost of keeping the Assumed Contracts in force pending Closing and for the payment of any Cure Claims.

14. The APA provides that if the Buyer determines, at any time prior to the Closing Date, that the Debtors are a party to any contract, license, commitment, sale or purchase order or other instrument other than an Assumed Contract (each, an "Additional Contract"), the Buyer may request the assumption and assignment to the Buyer of such Additional Contract, and the Trustee is required to use commercially reasonable efforts to assume and assign each such Additional Contract to the Buyer; provided that the Buyer may not demand the assumption or assignment of any Additional Contract that previously has been rejected by the Seller in accordance with the Bankruptcy Code. Under the APA, until the Closing Date, the Buyer may drop any contract or lease from the list of Assumed Contract or Additional Contract to be assumed and assigned.

7

### III. BACKGROUND

**A. General Background.**

15. On April 3, 2014 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code. The Trustee was appointed on April 3, 2014.

16. Northern Berkshire Healthcare, Inc. ("NBH") is a non-profit healthcare corporation located in northern Berkshire County, Massachusetts and is the sole member of the other two Debtors, which are also non-profit corporations. Prior to the Petition Date, NBH operated the North Adams Regional Hospital and the other Debtors operated associated medical practices in North Adams, Massachusetts.

17. Wells Fargo Bank, N.A. ("Wells Fargo") serves as trustee or successor trustee for bonds that are allegedly secured by substantially all the Debtors' assets. Wells Fargo asserts claims in excess of $35,000,000. Adams Community Bank holds a mortgage on the Family Medicine Building to secure an asserted claim of approximately $375,000. The Pension Benefit Guarantee Corporation holds a mortgage on the Family Medicine Building to secure amounts associated with the Debtors' former pension plan. Various other creditors assert liens against individual items of personal property owned by the Debtors, including an allegedly secured claim against NBH's CT scanner of approximately $280,000 held by Philips Medical Capital. The Debtors' schedules list nominal priority claims, and non-priority unsecured claims in the approximate following amounts: (a) NBH – $6,370,000; (b) Northern Berkshire Healthcare Physicians Group, Inc. – $82,000; and (c) Visiting Nurse Association & Hospice of Northern Berkshire, Inc. – $97,000.[4] As adequate protection of the liens and security interests of each of

---

[4] The Trustee has not reviewed any claims or any liens securing such claims, including the liens and claims asserted by Wells Fargo and Adams Community Bank, and reserves all rights, claims and defenses with respect to any claim or lien asserted against the Debtors' bankruptcy estates and/or assets.

these secured parties, their liens will attach to the proceeds of sale of the Purchased Assets to the same extent, priority and validity as existed on the Petition Date.

18. Prior to the Petition Date, the Debtors ceased providing medical services and moved any patients to other hospitals. The Debtors discharged substantially all of their employees prior to the Petition Date and paid all wages, vacation pay and sick pay in full. Two (2) core groups of administrative employees were, prior to the Petition Date, paid in advance either through April 4, 2014, or April 11, 2014.

19. The Trustee is working with various creditor constituencies and other interested parties, including the Buyer and the Attorney General for the Commonwealth of Massachusetts, to insure the orderly wind down of the Debtors' hospital and associated medical practices, the transition of patient records to BMC and to facilitate BMC's provision of critical medical services to the local community.

20. Among the tasks associated with the orderly wind down of the Debtors' hospital and associated medical practices are disposing of controlled substances within the hospital, maintaining security for the hospital property, arranging for access to and storage of patient medical records, maintaining the integrity of the hospital's computer network, arranging for the coding and billing of medical accounts receivable, preserving specialized medical equipment pending its liquidation, and arranging for the filing of various reports with state and Federal agencies.

21. The Trustee will shortly be filing an application to retain DJM Realty Services, LLC to assist the Trustee in marketing the Acquired Assets in order to maximize the possibility of obtaining one or more counter-offers.

IV.     REQUEST FOR RELIEF

A.     **Authority to Sell Assets.**

22.     Pursuant to Section 363(f) of the Bankruptcy Code, the Trustee requests the authority to sell the Acquired Assets free and clear of all liens, claims and interests of any kind or nature, including without limitation any obligations to, or claims, rights of offset or recoupment of, Medicaid, Medicare, MassHealth, Blue Cross Blue Shield or any third party payors. Except for the Assumed Liabilities, all liens and claims against or interests in the Acquired Assets will attach to the proceeds from the sale to the same extent, priority and validity that existed on the Petition Date.

23.     The Bankruptcy Code requires court approval for the use, sale or lease of a debtor's assets outside the ordinary course of business. *See* 11 U.S.C. § 363. In pertinent part, Section 363(b)(1) provides that a "trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1).

24.     Courts have approved a sale of a debtor's assets if the proposed transaction represents the exercise of reasonable business judgment by the trustee. *See In re Martin*, 91 F.3d 389, 396 (3d Cir. 1996); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Thomas McKinnon Securities, Inc.*, 120 B.R 301 (Bankr. S.D.N.Y. 1990); *In re Coastal Indus., Inc.*, 63 B.R 361,367 (Bankr. N.D. Ohio 1986); *In re Baldwin United Corp.*, 43 B.R 888 (Bankr. S.D. Ohio 1984).

25.     The Debtors experienced financial difficulties for years prior to the Petition Date, including a prior bankruptcy proceeding. The Debtors operations ceased prior to the Petition Date, and there is no viable prospect for those operations to recommence. In the absence of a sale of the Acquired Assets, the costs of maintaining those assets, primarily NBH's large hospital

complex, will quickly deplete the available resources. The Acquired Assets must be sold as expeditiously as possible. Conducting a sale process utilizing the Buyer as a stalking horse, in conjunction with the marketing effort by the Trustee, provides the best prospect to maximize the value of the Acquired Assets. The Sale therefore represents the exercise of reasonable business judgment by the Trustee and is in the best interest of the Debtors' bankruptcy estates, their creditors and parties in interest. *See In re Martin*, 91 F.3d 389, 396; *In re Lionel Corp.*, 722 F.2d 1063, 1070.

26. Section 363(f) permits a trustee to sell assets free and clear of liens claims and interests if, among other things, the holders of the interests consent and/or if the holder of the interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. *See* 11 U.S.C. § 363(f)(2) and (5). To the extent that any secured creditor does not consent to the Sale, such creditor could be compelled to accept a money satisfaction of its secured claim such that Section 363(f)(5) is satisfied. *See In re Healthco International, Inc.*, 174 B.R. 174 (Bankr. D. Mass. 1994).

**B.    Authority to Assume Executory Contracts.**

27. Subject to court approval, Section 365(a) of the Bankruptcy Code authorizes a trustee to assume and assign or reject an executory contract or unexpired lease. *See* 11 U.S.C. § 365(a). The standard for determining whether an executory contract or unexpired lease should be assumed or rejected is the "business judgment" test. *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional").

28. Upon finding that a trustee has exercised sound business judgment in determining that the assumption or rejection is in the best interests of its estate, the court should approve the

11

assumption or rejection under Section 365(a) of the Bankruptcy Code. *See In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992); *In re TS Indus., Inc.*, 117 B.R. 682, 685 (Bankr. D. Utah 1990); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990).

29. The assumption and assignment of the Assumed Contracts are necessary for the consummation of the APA. The Trustee is requesting the authority to assume the Assumed Contracts only in the event that the sale of the Acquired Assets closes.

30. As is described above, the consummation of the Sale is represents the exercise of the Trustee's reasonable business judgment and is in the best interest of the Debtors' bankruptcy estates, their creditors and parties in interest. Because the assumption and assignment of the Assumed Contracts is necessary for the consummation of the Sale, the assumption and assignment of the Assumed Contracts pursuant to the APA also meets the necessary legal standard. *See In re Child World*, 142 B.R. at 89; *In re TS Indus*, 117 B.R. at 685; *In re Del Grosso*, 115 B.R. at 138.

31. In conjunction with the assumption and assignment of the Assumed Contracts, the Trustee requests that the Court approve the proposed Cure Claims.[5]

### V. NOTICE

32. Contemporaneously with the filing of this motion, the Trustee has filed the *Trustee's Motion For Approval of Bidding Procedures, Assumption Procedures, Notice Procedures And Breakup Fee Provision in Connection With Trustee's Motion (A) to Authorize Sale of Substantially All Assets by Private Sale Free And Clear of Liens, Claims And Interests; (B) to Authorize Trustee to Effectuate Asset Purchase Agreement; (C) to Authorize The Assumption And Assignment of Executory Contracts; And (D) For Related Relief* (the "Bid

---

[5] The Bid Procedures Motion includes a proposed form of notice of the Proposed Cure Payments and a proposed procedure for counter-parties to Assumed Contracts to contest the Proposed Cure Payments.

Procedures Motion") in which the Trustee has requested that the Court approve notice and service procedures with respect to the Sale. The Trustee will serve this motion in accordance with the Court's ruling on the Bid Procedures Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order: (a) approving this motion, (b) authorizing the sale of the Acquired Assets as contemplated by the APA, (c) authorizing, but not directing, the Trustee to take the steps necessary to the effectuate the APA, (d) authorizing, but not directing, the Trustee to assume and assign the executory contracts contemplated by the APA, (e) approving the proposed Cure Claims, and (f) granting such other relief as this Court deems proper.

Respectfully submitted,

HAROLD B. MURPHY, Trustee,
By his counsel,

/s/ *D. Ethan Jeffery*
Harold B. Murphy (BBO #362610)
D. Ethan Jeffery (BBO #631941)
MURPHY & KING, Professional Corporation
One Beacon Street
Boston, MA  02108-3107
Tel: (617) 423-0400
Fax: (617) 556-8985

Dated: May 30, 2014

669847