**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Western Division)**

| | |
|---|---|
| In re:<br><br>**NORTHERN BERKSHIRE HEALTHCARE, INC., et al.**[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 14-30327-HJB<br><br>Jointly Administered |

**TRUSTEE'S MOTION FOR APPROVAL OF BIDDING PROCEDURES,
ASSUMPTION PROCEDURES, NOTICE PROCEDURES
AND BREAKUP FEE PROVISION IN CONNECTION WITH
TRUSTEE'S MOTION (A) TO AUTHORIZE SALE OF SUBSTANTIALLY
ALL ASSETS BY PRIVATE SALE FREE AND CLEAR OF LIENS, CLAIMS AND
INTERESTS; (B) TO AUTHORIZE TRUSTEE TO EFFECTUATE ASSET
PURCHASE AGREEMENT; (C) TO AUTHORIZE THE ASSUMPTION AND
<u>ASSIGNMENT OF EXECUTORY CONTRACTS; AND (D) FOR RELATED RELIEF</u>**
**(Expedited Determination Requested)**

Harold B. Murphy (the "<u>Trustee</u>"), the Chapter 7 trustee for Northern Berkshire Healthcare, Inc., Northern Berkshire Healthcare Physicians Group, Inc., and Visiting Nurse Association & Hospice of Northern Berkshire, Inc. (collectively the "<u>Debtors</u>"), moves the Court, in conjunction with the *Trustee's Motion (A) to Authorize Sale of Substantially All Assets by Private Sale Free And Clear of Liens, Claims And Interests; (B) to Authorize Trustee to Effectuate Asset Purchase Agreement; (C) to Authorize The Assumption And Assignment of Executory Contracts; And (D) For Related Relief* (the "<u>Sale Motion</u>"), for the entry of an order approving (a) the Bid Procedures (as defined below), (b) procedures for the designation of contracts and leases to be assumed and assigned in connection with the proposed sale and for the allowance and payment of cure amounts associated with those contracts and leases (the

---

[1] The other debtors in these jointly administered cases are: (a) Northern Berkshire Healthcare Physicians Group, Inc., bankruptcy number 14-30329-HJB; and (b) Visiting Nurse & Hospice of Northern Berkshire, Inc., bankruptcy number 14-30330-HJB.

"Assumption Procedures"), (c) notice procedures related to the proposed sale (the "Sale Notice Procedures"), and (d) provisions relating to the Breakup Fee (as defined below). The Sale Motion seeks approval of an asset purchase agreement (the "APA") that contemplates the sale of substantially all of the Debtors' assets to Berkshire Medical Center, Inc. or its nominee (the "Buyer").[2]

The APA requires: (a) that the Trustee obtain an order approving the Bid Procedures on or before 5:00 p.m. on June 11, 2014, (b) that a hearing on the proposed sale be held on or before August 15, 2014, and (c) that a closing of the proposed sale occur not later than September 5, 2014. In light of these deadlines, expedited consideration of this motion is appropriate.

In further support of this motion, the Debtor avers as follows:

### I.  JURISDICTION

1.  This Court has jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicates for the relief requested in this motion include Sections 105(a), 361, 362, and 363 of the Bankruptcy Code, Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, and MLBR 6004-1 and 6006-1.

### II.  BACKGROUND

3.  On April 3, 2014 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code. The Trustee was appointed on April 3, 2014.

4.  Northern Berkshire Healthcare, Inc. ("NBH") is a non-profit healthcare corporation located in northern Berkshire County, Massachusetts and is the sole member of the

---

[2] This motion contains summaries of various terms of the APA but is not meant to be a substitute for the APA which contains additional terms and conditions. In the event of a conflict between this motion and the APA, the APA shall control.

other two Debtors, which are also non-profit corporations. Prior to the Petition Date, NBH operated the North Adams Regional Hospital and the other Debtors operated associated medical practices in North Adams, Massachusetts.

5.      Wells Fargo Bank, N.A. ("Wells Fargo") serves as trustee or successor trustee for bonds that are allegedly secured by substantially all the Debtors' assets.[3] Wells Fargo asserts claims in excess of $35,000,000.

6.      Prior to the Petition Date, the Debtors ceased providing medical services and moved any patients to other hospitals. The Debtors discharged substantially all of their employees prior to the Petition Date and paid all wages, vacation pay and sick pay in full. Two (2) core groups of administrative employees were, prior to the Petition Date, paid in advance either through April 4, 2014, or April 11, 2014.

7.      The Trustee is working with various creditor constituencies and other interested parties, including the Buyer and the Attorney General for the Commonwealth of Massachusetts, to insure the orderly wind down of the Debtors' hospital and associated medical practices, the transition of patient records to BMC and to facilitate BMC's provision of critical medical services to the local community. BMC re-opened the emergency room at NBH's hospital facility on May 19, 2014.

8.      Among the tasks associated with the orderly wind down of the Debtors' hospital and associated medical practices are disposing of controlled substances within the hospital, maintaining security for the hospital property, arranging for access to and storage of patient medical records, maintaining the integrity of the hospital's computer network, arranging for the coding and billing of medical accounts receivable, preserving specialized medical equipment

---

[3] The Trustee has not reviewed Wells Fargo's liens and claims, and reserves all rights with respect to such liens and claims.

pending its liquidation, and arranging for the filing of various reports with state and Federal agencies.

9. Contemporaneously with the filing of this motion, the Trustee filed the Sale Motion requesting the approval of the sale of substantially all of the Debtors' assets (the "Acquired Assets") to BMC. The proposed purchase price for the Acquired Assets is $4,000,000 (the "Purchase Price").

10. The Trustee requests the approval of the Bid Procedures, the Assumption Procedures, the Sale Notice Procedures and the Breakup Fee Provisions to ensure an orderly sale process and promote the maximum recovery for the Acquired Assets.

### III. RELIEF REQUESTED

**A. Bid Procedures**

11. The Trustee requests the approval of the following bid procedures (the "Bid Procedures") for use in the sale of the Acquired Assets:

   a. Competing bids may be submitted for: (i) the Hospital Campus,[4] (ii) the Family Medicine Premises, (iii) the Fixed Assets, or (iv) all or any combination of the foregoing.

   b. Any competing bid shall be deemed to qualify as a competing bid (a "Competing Bid") only if: (1) made upon terms substantially similar to those set forth in the APA, except for assets to be purchased and the consideration to be paid to Seller; and (2) (A) for the Hospital Campus and the Fixed Assets located at the Hospital Campus for a cash amount of not less than $3,570,000 (the "Hospital Overbid"), (B) for the Family Medicine Premises and the Fixed Assets located at the Family Medicine Premises for an amount of not less than $630,000 (the "Family Medicine Overbid"), (C) for a Qualified Bid involving the Hospital Campus, the Fixed Assets located at the Hospital Campus, the Family Medicine Premises and the Fixed Assets located at the Family Medicine Premises, for an amount of not less than the aggregate of the Hospital Overbid and the Family Medicine Overbid, and (D) for the Fixed Assets, in any amount; and (3) such competing bid contains the information and satisfies the requirements for constituting a "Competing Bid" set forth in the other clauses of paragraph 9(e) of the APA.

---

[4] Capitalized terms not otherwise defined in this motion shall have the meanings ascribed to them in the Sale Motion and the APA.

4

  c. A Competing Bid must contain a case caption as set forth above and be filed, in accordance with the applicable Federal and local Rules of Bankruptcy Procedure,[5] with the United States Bankruptcy Court for the District of Massachusetts, United States Courthouse, 300 State Street, Springfield, Massachusetts, 01105-2925, on or before 4:30 p.m. on the date that is three (3) days prior to the Sale Hearing, or if that date is not a Business Day, the first Business Day prior to that date (the "Bidding Deadline").  A Competing Bid must be served on (1) counsel for Seller, D. Ethan Jeffery, Murphy & King, Professional Corporation, One Beacon Street, Boston, Massachusetts 02108; (2) counsel for Buyer, Joseph Baldiga, Mirick O'Connell, DeMallie & Lougee, LLP, 100 Front Street, Worcester, Massachusetts, 01608; (3) Stephen Meunier, the Office of the United States Trustee, 446 Main Street, 14th Floor, Worcester, Massachusetts, 01608; and (4) counsel for Wells Fargo Bank, NA, J. Mark Fisher, Schiff Hardin LLP, 233 South Wacker Drive, Suite 6600 (collectively the "Service Parties").

  d. A Competing Bid must be accompanied by an executed asset purchase APA in the form of the APA with such changes as are acceptable to the entity submitting the Competing Bid, including a purchase price expressed in U.S. Dollars and accompanied by all exhibits and schedules thereto.

  e. The terms and conditions of the Competing Bid must be, in aggregate, not materially more burdensome to Seller than the provisions contained in the APA.  A Competing Bid must not be subject to contingencies for financing, the completion of due diligence or environmental contingencies.

  f. Any competing bidder must deliver a cash deposit (the "Deposit") to counsel for Seller at the time of submission of such bid that is equal to ten percent (10%) of the cash value of the Competing Bid.  The Deposit shall be in the form of a certified check or wire transfer, and must be received on or before Bidding Deadline.  The Deposit delivered by a competing bidder will be forfeited in the event that such competing bidder is the successful bidder and fails to close on the sale through no fault of the Trustee.

  g. Any party submitting a Competing Bid shall demonstrate to Seller's satisfaction that: (1) it is financially able to consummate the transactions contemplated by the Competing Bid, which ability may be demonstrated by submission of bank statements, current audited or unaudited financial statements, or other reasonable evidence, or, if the bidder is an entity formed for the purpose of acquiring the assets in question, current audited or unaudited financial statements or other reasonable evidence of the financial capability of the equity holders of the bidder; (2) it is able to perform under any assumed contracts and/or leases; (3) it is able to fulfill any remaining obligations under the respective asset purchase APA(s); and

---

[5] Among the applicable provisions of the Local Rules of Bankruptcy Procedure is the restriction on facsimile filings pursuant to MLBR 5005-4.

5

      (4) it has written evidence of a financing commitment sufficient to permit the consummation of the transactions in question.

  h.  Any party submitting a Competing Bid must agree to keep its offer open for at least thirty (30) days following the entry of an order approving the sale of the assets that are the subject of the Competing Bid and must agree to close in the event the party who submits the successful bid fails to close.

  i.  An auction for all or any part of the Purchased Assets shall be held only if there is a Competing Bid for the respective assets.  Bidding at any auction for all or any part of the Purchased Assets shall be conducted by the Court immediately prior to the Sale Hearing in accordance with auction procedures to be announced at the time of the auction.  The auction shall take place at the Court.

  j.  In the event the Buyer's bid is not approved by the court as the highest and best bid, the Buyer shall receive a breakup fee in an amount equal to five percent of the Buyer's original purchase price for the assets subject to such alternative transaction (the "<u>Breakup Fee</u>").  The Breakup Fee will be payable only from the proceeds of the closing of the respective alternative transaction, in immediately available funds on the closing with the successful bidder.  The Breakup Fee shall be deemed an allowed administrative expense claim.

  k.  The Competing Bid must provide, and the Court's order approving the Bidding Procedures shall require competing bidders to allow the Buyer or, in the Buyer's discretion with the agreement of the Commonwealth of Massachusetts, the Commonwealth of Massachusetts, to occupy the Real Estate under the terms of the Use and Occupancy Agreement for the period after the closing of an alternative transaction that the Commonwealth of Massachusetts determines, in its sole judgment, is reasonably necessary, pursuant to M.G.L. Chapter 111, Section 51G and 105 C.M.R. 130.122, for the Buyer to continue providing a satellite emergency facility, including ancillary radiology and laboratory services, pursuant to 105 CMR 130.820-.836 (collectively, the "<u>SEF</u>"), with the Buyer retaining the right to terminate on 90 days' notice to the purchaser and the Commonwealth of Massachusetts consistent with such statutes and as reasonably necessary to allow the Buyer to wind down the operation of the Buyer's proposed SEF and other operations and services in the Real Estate in a manner consistent with such statutes and regulations and to make available appropriate SEF services to the community at an alternate location; provided, however, that such occupancy shall not exceed 365 days from the closing of such alternative transaction and shall be subject to the rent, cost reimbursement and restrictions in the occupancy agreement set forth in the Use and Occupancy Agreement.  The rights and obligations of the Buyer under the Use and Occupancy Agreement from and after the closing of an alternative transaction therefor shall be assignable by the Buyer to the Commonwealth of Massachusetts at the election of, and on terms and conditions acceptable to, the Buyer and the Commonwealth.

l. If a purchaser other than the Buyer purchases any of the Real Estate, that purchaser shall be subject to the terms of the Use and Occupancy Agreement applicable to a "Purchaser" under that Use and Occupancy Agreement.

12. In the event the party who submits the highest and best bid for the Acquired Assets fails to close on the sale through no fault of the Trustee, the Trustee requests that the order approving the Bid Procedures provide that such party's Deposit be forfeited to the Trustee.

B. **Assumption of Executory Contracts**

13. The APA provides that the Buyer has the right to designate contracts, agreements, leases and/or licenses of the Debtors that are to be assumed and assigned to the Buyer (collectively the "Assumed Contracts"). The initial list of the Assumed Contracts is attached to the APA as Schedule 1(a)(iv). The Trustee's proposed cure claims for arrearages under the Assumed Contracts (collectively the "Cure Claims") are listed on Exhibit B to the Sale Motion. As more particularly set forth in the APA, the Buyer is responsible for the payment of agreed pre-petition amounts due under the Assumed Contracts and any post-petition amount due to contract counter-parties on or after May 1, 2014. In the Sale Motion, the Trustee seeks an order approving the assumption and assignment of the Assumed Contracts.

14. The Trustee proposes the following Assumption Procedures:

a. Any interested party seeking to object to the assumption and assignment to any bidder, or to the validity of the cure amount, if any, as set forth in the Assumed Contract Notice (as defined below), or to otherwise assert that any amounts, defaults, conditions, or pecuniary losses as of the Petition Date must be cured or satisfied under any of the Assumed Contracts in order for such contract to be assumed and/or assigned (collectively, a "Cure Obligation"), must file and serve an objection (a "Cure Objection") so that such Cure Objection is docketed and received by the Trustee and the Buyer not later than the Bidding Deadline (the "Cure Objection Deadline").

b. A Cure Objection must set forth with specificity any and all Cure Obligations or conditions which such party asserts must be cured or satisfied with respect to such Assumed Contract, including any objection with respect to adequate assurance of future performance. Cure Objections shall set forth the cure amount that the

7

        objector asserts is due, the specific types and dates of the alleged defaults, pecuniary losses and conditions to assignment, and all other objections to assumption and assignment.

    c.    Unless a Cure Objection is filed and served by the Cure Objection Deadline, all interested parties who have received actual notice of these procedures shall be deemed to have waived and released any right to assert a Cure Obligation and to have otherwise consented to the assignment and shall be forever barred and estopped from asserting or claiming against the Trustee, Buyer, or any other assignee of the relevant assigned contract that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such Assumed Contract for the period prior to the Petition Date.

    d.    Hearings with respect to any Cure Objections may be held (i) at the Sale Hearing, or (ii) at such other date as the Court may designate, provided that if the subject Assumed Contract is assumed and assigned prior to resolution of any Cure Objection, the cure amount asserted by the objecting party (or such lower amount as may be fixed by the Court) shall be deposited to be held in a segregated account maintained by the Trustee or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

    e.    Attached as <u>Exhibit A</u> is a proposed form of notice (the "<u>Assumed Contract Notice</u>") that includes information with respect to the procedures for the Assigned Contracts. The Trustee proposes to serve the Assigned Contract Notice on all parties to the Assigned Contracts.

15.    The Buyer will be responsible for the payment of any Cure Claims associated with the assumption and assignment of the Assumed Contracts.

**C.**    **<u>Notice Procedures</u>**

16.    The Trustee will serve copies of this motion, the Sale Motion, the APA and all associated notices of hearing upon: (a) the United States Trustee, (b) counsel for Wells Fargo Bank, NA, (c) counsel for the Buyer, (d) the Attorney General for the Commonwealth of Massachusetts, (e) the Massachusetts Department of Revenue, (f) the Internal Revenue Service, (g) the Debtors' twenty largest creditors, (h) all parties who have expressed an interest in purchasing the Debtors' assets, and (i) all parties who have filed a notice of appearance (collectively the "<u>Notice Parties</u>").

8

17. The creditor matrix in the Debtors' cases includes approximately 1,200 parties, most of whom have not participated in these proceedings and are unlikely to have an interest in or respond to the sale pleadings. Service to these parties of the full package of sale documents would be unnecessarily costly and burdensome to the Debtors' bankruptcy estates. Attached as Exhibit B is a proposed form of notice that provides information regarding, among other things, the proposed sale, instructions on how to obtain full copies of the proposed pleadings and sale documents at no cost, the transfer of patient records held by the Debtors and how individuals can obtain their own patient records (the "Sale Notice"). The Trustee proposes to serve only the Sale Notice upon all creditors and parties-in-interest, other than the Notice Parties.

18. The Trustee will also place a notice of the proposed sale and of the transfer of patient records to the Buyer in the Berkshire Eagle, the Bennington Banner and on iBerkshires.com, an online newspaper.

19. Contemporaneously with the filing of this motion, the Trustee has filed the *Trustee's Motion For Approval of Medical Records Custody And Storage Agreement* (the "Records Custody Motion") seeking approval of an agreement with the Buyer whereby the Buyer will take custody of and responsibility for the patient medical records held by the Debtors. The Trustee will place notice of the transfer of the Debtors' patient records to the Buyer in the Berkshire Eagle, the Bennington Banner and on iBerkshires.com, and will post the relevant information on the Debtors' website. Notice regarding the transfer of the patient records is also included in the Sale Notice, which, subject to Court approval, will be served as set forth above.

20. Massachusetts General Laws Chapter 180, Section 8A, provides for a thirty (30) day notice period for the sale of the assets of a not-for-profit entity. Although the Trustee does not concede that this statute is applicable in a bankruptcy proceeding, the Trustee is prepared to

9

serve notice in accordance with the statute in the same manner as the Sale Notice and the Assumed Contract Notice. Attached as <u>Exhibit C</u> is a proposed form of notice pursuant to Massachusetts General Laws Chapter 180, Section 8A (the "<u>State Law Notice</u>").

**D.    Breakup Fee Provisions**

21.    Subject to the Court's approval, the APA provides that the Buyer is entitled to the Breakup Fee, which is equal to five percent (5%) of the Buyer's original purchase price for the assets subject to an alternative transaction. The APA provides that the Breakup Fee will be payable only from the proceeds of the closing of the respective alternative transaction, in immediately available funds on the closing with the successful bidder, and that the Breakup Fee will be deemed an allowed administrative expense claim

**IV.    THE SALE PROCEDURES AND BREAKUP FEE PROVISIONS SHOULD BE APPROVED**

25.    Good and sufficient cause exists to approve the proposed Bid Procedures, the Assumption Procedures and the Sale Notice Procedures (collectively the "<u>Sale Procedures</u>") as well as the Breakup Fee.

26.    The Sale Procedures and the Breakup Fee are the product of arms-length negotiations between the Trustee and the Buyer. The Sale Procedures and the Breakup Fee will assist in administering an orderly sale process and provide reasonable protection to the Buyer.

27.    The Sale Procedures and the Breakup Fee are typical of sales of this size and complexity in this district.

28.    In *In re O'Brien Environmental Energy, Inc.*, the Third Circuit held that termination fees should be allowed where such "fees were actually necessary to preserve the value of the estate." *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999). A break-up fee will provide a benefit to an estate if, for example, "assurance of a break-

10

up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." *Id*. Other examples of a benefit provided by a break-up fee would be if the initial offer which included the break-up fee "served as a catalyst to higher bids" or "if the availability of break-up fees and expenses were to induce a bidder to research the value of the assets and convert that value to a dollar figure on which other bidders can rely . . . ." *Id*.

29. The Buyer is unwilling to act as the stalking-horse bidder without the Breakup Fee. By having Buyer as a stalking-horse bidder, much of the due diligence, contract negotiation and other work necessary to submit a bid for the Acquired Assets will have been completed. This will shorten the time and cost required for prospective bidders to submit a Competing Bid and will therefore promote such bids. The sale of the Acquired Assets without a stalking-horse bidder would be more time consuming, more expensive and would likely result in a significantly lower price for the Acquired Assets. The approval of the Breakup Fee will therefore benefit the Debtors' bankruptcy estates.

[this space intentionally left blank]

**WHEREFORE**, the Trustee requests that the Court enter an order: (a) approving this motion, (b) approving the Bid Procedures, (c) establishing deadlines for the submission of counter-offers and the filing of objections, (d) approving the Sale Procedures, (e) approving the form of the Sale Notice, the Assumed Contract Notice and the State Law Notice, (f) approving the manner and method of service of notice described in this motion, including in Section III(C) of this motion, (g) setting a hearing on the Sale Motion, and (h) granting such other relief as is just and proper.

Respectfully submitted,

HAROLD B. MURPHY, Trustee,
By his counsel,

/s/ *D. Ethan Jeffery*
Harold B. Murphy (BBO #362610)
D. Ethan Jeffery (BBO #631941)
MURPHY & KING, Professional Corporation
One Beacon Street
Boston, MA  02108-3107
Tel: (617) 423-0400
Fax: (617) 556-8985

Dated:  May 30, 2014

669802